Newtek\Children First\Texas First Capital\Adversary Complaint

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

**Newtek Small Business Finance, LLC,**            :
                 Plaintiff,            :
            v.            : Civil Action No. 22-2461
**Texas First Capital, Inc.,**            :
                 Defendant.            :

---
                                                 :

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
COMPENSATORY AND PUNITIVE DAMAGES**

**NOW COMES** Newtek Small Business Finance, LLC ("Newtek"), by and through its attorneys, Chartwell Law, and files the following Complaint for Declaratory and Injunctive Relief, Compensatory and Punitive Damages:

## I.  **PARTIES.**

1.     Plaintiff is a New York limited liability company, and has an address for purpose of this action located 1981 Marcus Avenue, Suite 130, Lake Success, NY 11042.

2.     Defendant, Texas First Capital, Inc., ("TFC") is a Texas for-profit corporation, with an address for purpose of service of notices and papers located at 201 Laurence Drive, Suite 202, Heath, TX 75032.

## II.  **JURISDICTION AND VENUE.**

3.     Diversity jurisdiction exists under 28 U.S.C. §1332, there being complete diversity between the Plaintiff, a New York limited liability company, and the Defendant, a Texas corporation, and the amount in controversy exceeds $75,000.

4.     Venue is properly laid within this District by virtue of 28 U.S.C. § 1391(b)(2).

### III.  BACKGROUND - NEWTEK'S LOANS.

**A.  First Loan:**

5.      On December 27, 2018, pursuant to an SBA Authorization dated September 12, 2018 (the "First Loan Authorization"), and Loan Agreement dated December 27, 2018 (the "First Loan Agreement"), Children First Home Health Care, Inc. dba Health Calls, a Pennsylvania corporation ("Children First"), borrowed the principal sum of $1,200,000 from Newtek (the "First Loan"), as evidence of which, Children First executed and delivered to Newtek its promissory note dated December 27, 2018, in the original principal amount of $1,200,000 (the "First Note").  True and correct copies of the First Loan Authorization, First Loan Agreement and First Note are attached hereto as Exhibits "A", "B" and "C", respectively, and are incorporated herein by reference.

6.      As security for its obligations under the First Note, Children First executed and delivered to Newtek a Security Agreement, dated December 27, 2018, in the original principal amount of $1,200,000, granting Newtek a lien on and/or purchase money security interest substantially all of its personal property (the "First Security Agreement" and "Personal Property Collateral").  To perfect the security interests thus granted, Newtek duly filed a UCC-1 Financing Statement with the Commonwealth of Pennsylvania, Department of State, Bureau of Corporations and Charitable Organizations, Uniform Commercial Code Section, against Children First on December 10, 2018, at Financing Statement No. 2018121001078 (the "First Financing Statement").  True and correct copies of the First Security Agreement and First Financing Statement are attached hereto as Exhibits "D" and "E", respectively, and are incorporated herein by reference.

2

**B.  Second Loan:**

7.      On March 28, 2019, pursuant to an SBA Authorization dated February 14, 2019 (the "Second Loan Authorization"), and Loan Agreement dated March 28, 2019 (the "Second Loan Agreement"), Children First borrowed the principal sum of $550,000 from Newtek (the "Second Loan"), as evidence of which, Children First executed and delivered to Newtek its promissory note dated March 28, 2019, in the original principal amount of $550,000 (the "Second Note").  True and correct copies of the Second Loan Authorization, Second Loan Agreement and Second Note are attached hereto as Exhibits "F", "G" and "H", respectively, and are incorporated herein by reference.

8.      As security for its obligations under the First Note, Children First executed and delivered to Newtek a Commercial Security Agreement, dated March 28, 2019, in the original principal amount of $550,000, granting Newtek a lien on and/or purchase money security interest substantially all of its personal property (the "Second Security Agreement").  To perfect the security interests thus granted, Newtek duly filed a UCC-1 Financing Statement with the Commonwealth of Pennsylvania, Department of State, Bureau of Corporations and Charitable Organizations, Uniform Commercial Code Section, against Children First on March 11, 2019, at Financing Statement No. 2019031102224 (the "Second Financing Statement", and together with the First Financing Statement, the "Newtek Financing Statements"). True and correct copies of the Second Security Agreement and Second Financing Statement are attached hereto as Exhibits "I" and "J", respectively, and are incorporated herein by reference.

9.      On March 28, 2019, Newtek, Children First, together with the various individual guarantors identified in the First and Second Authorizations, including, without limitation, Maria Radwanski, a principal of Children First ("M. Radwanski"), and David Radwanski, her husband

("D. Radwanski"), Michael Little, another principal of Children First ("M. Little"), and his wife, Kerri Little ("K. Little") executed a "Cross-Collateralization and Cross Default Agreement" that cross-collateralized and cross-defaulted the First and Second Loans (the "Cross Collateralization Agreement").  A true and correct copy of the Cross Collateralization Agreement is attached hereto as Exhibit "K", and is incorporated herein by reference.

10.    In each of the First and Second Security Agreements, Children First expressly granted Plaintiff ***"a general security interest in all of Debtor's right, title and interest in all personal property of Debtor, now owned or hereafter acquired, . . . of every kind and description wherever located, including, without limitation: all accounts and accounts receivable, general intangibles, . . . and any and all products and proceeds of any of the foregoing, whether now existing or hereafter acquired . . . "***.  First and Second Security Agreements, ¶ 1(b).  A substantially similar collateral description appeared in each of the Financing Statements, covering, in pertinent part, "All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), . . . deposit accounts, . . . money, other rights to payment and performance . . ., whether now owner or hereafter acquired . . . and all products and proceeds . . . of or relating to the foregoing property."

11.    Children First encountered financial difficulties leading to its cessation of all business operations in December, 2019, or January, 2020, without satisfying the First and Second Loans, which continue to be in default for non-payment, and Newtek is owed an amount in excess of what relief is being sought from TFC in this action.

## IV.  NEWTEK'S DISCOVERY OF TFC'S UNAUTHORIZED PURCHASE OF CHILDEN FIRST'S FUTURE ACCOUNTS RECEIVABLE.

12.     On April 29, 2020, D. Radwanski and M. Radwanski filed a voluntary petition for relief under sub-chapter V, of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"), which was docketed at case number 20-12159-pmm (the "Radwanski Bankruptcy Case").[1]

13.     On May 29, 2020, Newtek filed a Secured Proof of Claim in the Radwanski Bankruptcy Case, Claim No. 11, asserting a total claim of $1,719,414.16 (the "Newtek Claim"). As a public record, the Newtek Claim is subject to judicial notice, and is incorporated herein by reference, together with each of its attachments and exhibits.

14.     On June 2, 2020, Texas First Capital, Inc. ("TFC") filed twelve (12) separate Proofs of Claim in the Radwanski Bankruptcy Case (collectively, the "TFC Claims"), based on M. Radwanki's guarantee of future receivables sold to TFC by Children First (collectively, the "Accounts"), pursuant to various "Agreements for the Purchase and Sale of Future Receipts" (collectively, the "Sale Agreements"), as follows:

(a).    Claim No. 12, in the amount of $120,927.21, based on Sale Agreement dated December 18, 2019, face amount of $99,243.19, sold for $76,340.92;

(b).    Claim No. 13, in the amount of $70,541.25, based on Sale Agreement dated December 18, 2019, face amount of $62,500 sold for $25,000, less origination fee of $5,000;

(c).    Claim No. 14, in the amount of $60,370.92, based on Sale Agreement dated January 17, 2020, face amount of $44,470.92 sold for $34,208.40;

(d).    Claim No. 15, in the amount of $133,228.02, based on Sale Agreement dated January 17, 2020, face amount of $117,328.02 sold for $90,252.32;

---

[1]On August 11, 2020, the Bankruptcy Court entered an Order dismissing M. Radwanski from the Bankruptcy Case.

(e).     Claim No. 16, in the amount of $92,150, based on Sale Agreement dated December 10, 2019, face amount of $90,000 sold for $40,000, less origination fee of $10,000;

(f).     Claim No. 17, in the amount of $66,100, based on Sale Agreement dated December 13, 2019, face amount of $56,250 sold for $25,000, less origination fee of $5,000;

(g).     Claim No. 18, in the amount of $122,125, based on Sale Agreement dated November 21, 2019, face amount of $150,000 sold for $60,000, less origination fee of $5,000;

(h).     Claim No. 19, in the amount of $78,539.59, based on Sale Agreement dated January 17, 2020, face amount of $62,639.59 sold for $48,184.30;

(i).     Claim No. 20, in the amount of $34,506.25, based on Sale Agreement dated January 17, 2020, face amount of $18,606.25 sold for $14,312.50;

(j).     Claim No. 21, in the amount of $73,688.70, based on Sale Agreement dated January17, 2020, face amount of $70,692.89 sold for $54,379.15;

(k).     Claim No. 22, in the amount of $111,060.57, based on Sale Agreement dated January17, 2020, face amount of $95,150.57 sold for $73,200.44; and

(l).     Claim No. 24, in the amount of $102,466.67, based on Sale Agreement dated January 3, 2020, face amount of $87,500 sold for $50,000, less origination fee of $10,000.

15.     As public records, the TFC Claims are subject to judicial notice, and are incorporated herein by reference.

16.     TFC filed UCC-1 Financing Statements (collectively, the "TFC Financing Statements"): (a) against Children First, M. Radwanski, M. Little, and K. Little on July 17, 2019, at Filing No. 2019071701255; and (b) against Children First, M. Radwanski and K. Little on December 23, 2019 at Filing No. 2019122301395.  True and correct copies of the TFC Financing Statements are attached hereto as Exhibits "L" and "M", and are incorporated herein by reference.

17.     Through the foregoing transactions, Children First purportedly sold $954,381.43

worth of its future receivables (the "Receivables") to TFC for only $590,878.03 (a 38% discount), less origination fees of $35,000.

18.     In the Bankruptcy Case, TFC has admitted in answers to Plaintiff's interrogatories and responses to Plaintiff's requests for production of documents served on or about June 24, 2022, and then in a sworn deposition of TFC's principal, Andrew Goldberg, taken on July 29, 2021, to having advanced only $322,700 to Children First against the purchased Receivables, and to receiving $243,151.16 from its collection of the Receivables, by auto-debiting their proceeds from Children First's bank account (the "Deposit Account").  However, TFC was unable to establish that it had performed any searches for Uniform Commercial Code filings prior to purchasing the Children First Receivables, and it is therefore alleged that they did not, in fact, conduct any such searches.

19.     TFC's purchases of the Receivables, and its collection of their proceeds from the Deposit Account, were unauthorized by Newtek, and TFC either knew, or should have known of Newtek's prior record liens against the Receivables by virtue of the duly filed Newtek Financing Statements, and that Newtek at all times relevant hereto, held a senior, perfected lien against, and security interest therein.

20.     Despite the constructive notice of Newtek's prior record liens against the Receivables provided by the filing of the Newtek Financing Statements, TFC never notified Newtek of TFC's intent to purchase same, and never sought Newtek's authority to do so, so that TFC's collections of the Receivables from the Deposit Account were all subject to Newtek's perfected first lien security in the proceeds of those Receivables.

21.     Neither Children First, nor any of its principals, ever sought authority from Newtek to sell its Receivables to TFC, and none of them ever advised Newtek of the sale.

22.     From the secrecy with which TFC purportedly purchased the Receivables, and the fact that none of Children First's principals notified Newtek of same, it can be presumed that Children First ignored the legal effect of Newtek's security interests therein, and colluded with TFC to create additional value for Children First where none existed, by transferring their Receivables, which had been fully liened to Newtek, to TFC.

23.     At the time of Children First's purported sale of the Receivables to TFC, Children First was either actually insolvent, in that the sum of its assets was exceeded by the sum of its liabilities; or else was equitably insolvent, in that it was left with inadequate capital to meet its ongoing obligations, and was unable to timely pay all of its debts as they became due.

24.     Children First's financial distress was exacerbated when M. Little filed a voluntary chapter 7 petition for bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Pennsylvania on December 19, 2019, which was docketed at Case No. 19-17843-jkf (the "M. Little Bankruptcy Case").

25.     M. Little's Schedules of Assets and Liabilities, and Statements of Financial Affairs filed in the M. Little Bankruptcy Case (the "M. Little Schedules and Statements", M. Little Bankruptcy Case, D.I. No. 1), confirmed the existence of various unpaid creditors of Children First whose claims he had guaranteed, other than Newtek, including, without limitation: (a) another commercial lender, S&T Bank, successor to DNB First, National Association (owed $700,000); (b) its commercial landlord, The Corporate Campus at Spring Ridge 1220, L.P.; (c) First Home Bank (owed $250,000); (d) Influx Capital (owed $60,000); (e) Covino Family Offices, LLC (owed $200,000); (f) Lightstream (owed $6,000); (f) NRC Ventures (owed $90,000); and (g) On Deck Capital (owed $250,000). As public records, the M. Little Schedules and Statements are subject to judicial notice, and are incorporated herein by reference.

26.     Similarly, the Radwanskis' Schedules and Statements filed in the Radwanski Bankruptcy Case (Radwanski Bankruptcy Case, D.I. No. 38, the "Radwanski Schedules and Statements"), indicate the following unpaid creditors of Children First (other than Newtek), including, without limitation: (a) the Pennsylvania Department of Labor and Industry (owed $5,184); (b) the Internal Revenue Service (owed $5,000 for unpaid withholdings); (c) A.C.N. Consulting (owed $50,844); (d) AMS (owed $8,744.46); (j) Capital One (owed $20,793); (e) Copper Wood Capital LLC (owed $200,000); (f) the landlord, Corporate Campus at Spring Ridge 1220 LP (owed $200,000); (g) Covino Family Offices LLC (owed $205,231); (h) Creditor Advocates Inc. (owed $123,411); (i) DNB First, NA (owed $200,000); (j) Harvest Medical Billing (owed $21,686); (k) Lending Club (owed $14,652); (l) Lester and Harriet Little (owed $200,000); (m) McKeeson Medical-Surgical (owed $39,306); (n) Mr. Advance (owed $35,000); (o) Navi Heath Curspan Health Group Inc. (owed $11,366); (p) NCR Ventures (owed $208,572); (q) Philadelphia Insurance Companies (owed $12,000); (r) Phoebe Rehabilitation Services (owed $6,824); (s) Prosper Funding LLC (owed $28,344); (t) SoFi Lending Corp. (owed $28,009); (u) Thornbury Ltd. (owed $10,000); (v) UPMC Health Plan (owed $9,271); (w) Watson Group Holding, LLC (owed $10,000); (x) unpaid wage claims owed to various employees; and (y) various trade creditors of Children First.  As public records, the Radwanski Schedules and Statements are subject to judicial notice, and are incorporated herein by reference.

27.     M. Radwanski testified at first meeting of creditors in the Radwanski Bankruptcy Case pursuant to 11 U.S.C. §341 on June 12, 2020.  She testified that the reason for the Radwanskis' bankruptcy filing was Children First's insolvency, and its cessation of business operations on January 24, 2020, resulting from: M. Little's departure from the business in August, 2019, exclusively retaining the company computers' user name and password, without

providing all of the company's books and records to her; a malware virus in December, 2019 that prevented them from being able to issue bills; and three (3) separate Medicare audits throughout the fall of 2019, resulting in the denial of payments to the company, which cost the company approximately $90,000 to $110,000 for each audit.

## VI.  RELIEF REQUESTED.

### FIRST COUNT - DECLARATORY JUDGMENT, INJUNCTIVE RELIEF.

28.     Paragraphs 1 through 27 above are incorporated herein by reference.

29.     Plaintiff, by filing both of its Financing Statements prior to TFC's first filing of a Financing Statement on July 17, 2019, holds a perfected first lien security interest in the Receivables and the proceeds thereof, and Plaintiff's lien has priority over TFC's.

30.     The deposit of the Receivables in Children First's own Deposit Account did not divest Newtek's lien, and when TFC auto-debited its payments therefrom, the proceeds remained subject to Newtek's perfected prior liens.

31.     Plaintiff is entitled to the proceeds of all of the Receivables collected by TFC.

32.     Plaintiff is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, confirming its first lien position against the Receivables and their proceeds as collected by TFC.

33.     Plaintiff is further entitled to injunctive relief, directing that the Defendant disgorge the collected proceeds of the Receivables, and remit same to Plaintiff.

**WHEREFORE,** Newtek Small Business Finance, LLC hereby demands the entry of a declaratory judgment in its favor and against the Defendant, Texas First Capital, Inc.: declaring that Plaintiff has a valid lien on the Receivables and the proceeds thereof; declaring that

Plaintiff's lien is senior to the Defendant's lien; directing Texas First Capital to disgorge all proceeds of the collected Receivables, in an amount not less than $243,151.16, and remit same to Newtek Small Business Finance, LLC; and directing such other and further relief as is just and proper under the circumstances, including, without limitation, an award of reasonable attorney's fees and costs.

## SECOND COUNT - AVOIDANCE AND RECOVERY OF FRAUDULENT CONVEYANCES UNDER STATE LAW

34.     Paragraphs 1 through 33 above are incorporated herein by reference.

35.     The sale of the Receivables to TFC, and its collections of the proceeds of the Receivables, are subject to avoidance under Pennsylvania's "Uniform Voidable Transactions Act", found at 12 Pa.C.S.A. § 5101 *et seq.* (Purdon's 2022) ("PUVTA"), because: (a) Children First's sale of the Receivables to TFC was intended by the principals of Children First, if not by TFC, to hinder, and did in fact hinder and delay Children First's creditors, including the Plaintiff, in the enforcement of their respective rights and remedies; (b) TFC paid inadequate consideration for the Receivables; (c) Children First was actually insolvent at the time of its purported sale of the Receivables to TFC, in that its total liabilities exceeded the combined value its assets; (d) Children First was equitably insolvent at the time of its purported sale of the Receivables to TFC, as it was generally unable to pay its debts as they came due; (e) the purported sale of the Receivables to TFC left Children First with inadequate capital to operate; and (f) Children First's insolvency was exacerbated by its purported sale of the Receivables to TFC.

36.     For the foregoing reasons, Children First's purported sales of the Receivables to TFC, and TFC's collection of their proceeds, constituted voidable transactions under PUVTA.

37.     PUVTA authorizes a creditor harmed by a voidable transfer to bring and maintain a direct action against the transferee, without joinder of the transferor or any other party.

38.     Such voidable transactions should be avoided and recovered for the benefit of the Plaintiff, and a money judgment entered in favor of Plaintiff and against the Defendant for the amount of the Receivables it actually collected.

**WHEREFORE,** Newtek Small Business Finance, LLC hereby demands the entry of an Order or Orders: avoiding the sales of the Receivables to Texas First Capital, Inc., and its collection of the proceeds thereof, and entering judgment in favor of Newtek Small Business Finance, LLC and against Texas First Capital, Inc., in an amount not less than $243,151.16; and directing such other and further relief as is just and proper under the circumstances, including, without limitation, punitive damages, and an award of reasonable attorney's fees and costs.

### THIRD COUNT - <u>CONVERSION</u>.

39.     Paragraphs 1 through 38 above are incorporated herein by reference.

40.     TFC's attempted purchase and collection of the Receivables wrongfully deprived Newtek of the ability to collect them and apply the proceeds to the balances due under the First and Second Loans.

41.     Newtek is entitled to the entry of a money judgment in its favor and against TFC for the amount of the collected Receivables.

42.     Under Pennsylvania law, TFC's purchase and collection of the Receivables constituted conversion of Newtek's collateral, which entitles Newtek to treble damages.

**WHEREFORE,** Newtek Small Business Finance, LLC hereby demands the entry of judgment in its favor and against the defendant, Texas First Capital, Inc. for the amount of the

collected Receivables, in an amount not less than $243,151.16, together with such punitive damages as are allowed by Pennsylvania law for conversion of a secured creditor's collateral; and for such other and further relief as is just and proper under the circumstances, including, without limitation, an award of reasonable attorney's fees and costs.

### FOURTH COUNT - <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>.

43.     Paragraphs 1 through 42 above are incorporated herein by reference.

44.     Without legal or equitable justification, TFC tortiously interfered with Newtek's contractual rights and remedies against Children First with respect to the First and Second Loans, by purchasing and collecting Children First Receivables which it either knew, or should have known, were subject to Newtek's senior liens.

45.     As a result of such tortious interference in Newtek's contractual relationship with Children First, Newtek is entitled to compensatory and punitive damages.

**WHEREFORE,** Newtek Small Business Finance, LLC hereby demands the entry of judgment in its favor and against the defendant, Texas First Capital, Inc. for compensatory damages, in an amount not less than $243,151.16, together with such punitive damages as are allowed by Pennsylvania law for tortious interference with contract; and for such other and further relief as is just and proper under the circumstances, including, without limitation, an award of reasonable attorney's fees and costs.

Respectfully submitted,

**CHARTWELL LAW**

Dated: June 23, 2022

By: /s/ John J. Winter
    John J. Winter, Esq./Robert J. Murtaugh, Esq.
    Pa. ID Nos. 46849/57494
970 Rittenhouse Road, Suite 300
Eagleville, PA 19403
Telephone Number (610) 666-7700
Telecopier Number (610) 666-7704
*(Attorneys for Plaintiff,*
*Newtek Small Business Finance, LLC)*