IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEWTEK SMALL BUSINESS FINANCE, LLC, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 22-2461 |
| v. | : : | |
| TEXAS FIRST CAPITAL, INC., | : : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                                                                            December 7, 2022

      This case arises out of two creditors, burned by their common debtor, fighting over the scraps. The default rule under the Uniform Commercial Code for resolving this kind of fight is first in time, first in right. However, in certain instances, the Code cuts off a security interest to protect parties' confidence in the finality of regular commercial transactions. Here, the plaintiff seeks to claw back a completed transaction between the debtor and the defendant. But the Code is clear, without a showing of collusion, the defendant took the funds from the debtor free of the plaintiff's security interest.

      The defendant has moved to dismiss the complaint because it is devoid of any facts to support a finding of collusion, misconduct, or other fraudulent intent. The court agrees and will grant the motion to dismiss. However, this dismissal will be without prejudice to the plaintiff filing an amended complaint if it can include the necessary factual allegations to maintain a plausible claim for relief.

## I.     ALLEGATIONS AND PROCEDURAL HISTORY

On June 23, 2022, the plaintiff, Newtek Small Business Finance, LLC ("Newtek"), filed the instant complaint against the defendant, Texas First Capital, Inc. ("Texas First"). Doc. No. 1. In the complaint, Newtek alleges that it has a security interest in, *inter alia*, the accounts receivable of the defunct debtor, Children First Home Health Care, Inc. ("Children First"). *See* Compl. at 4, Doc. No. 1. When Children First collected on the accounts receivable, it would deposit the funds into a bank account which was used to pay various business expenses. *Id.* at ¶ 18; *see also* Mot. to Dismiss at ECF p. 6, Doc. No. 4. Newtek did not have an original security interest in this deposit account but instead relied on the funds being proceeds of the accounts receivable. *See* Compl. at ¶¶ 4, 18, 20.

Texas First joined the fray through a series of transactions in late 2019 and early 2020 when it purchased a portion of Children First's future receivables amounting to $954,381.43 in exchange for an upfront sum of $590,878.03. *See id.* at ¶ 17; *see also* Mot. to Dismiss at ECF p. 3. Texas First collected its payments by auto-debiting Children First's bank account. *See* Compl. at ¶ 18; *see also* Mot. to Dismiss at ECF p. 6. At the time of these transactions, Children First was in financial distress. *See* Compl. at 8. Within six months, Maria Radwanski and Michael Little, both principals of Children First, had filed for bankruptcy. *See id.* at ¶¶ 9, 24.

Based on these allegations, Newtek asserts causes of action for conversion, fraudulent conveyances, and tortious interference with a contract. *Id.* at 11–13. Newtek also seeks a declaratory judgment that it holds a perfected first lien security interest in the accounts receivables and any proceeds, and its lien has priority over Texas First's lien. *Id.* at 10. In addition, Newtek seeks an injunction directing Texas First to disgorge the proceeds collected from the receivables and remit those proceeds to Newtek. *Id.*

In response to the complaint, Texas First filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on August 25, 2022. Doc. No. 4. On September 14, 2022, Newtek filed a response in opposition to the motion to dismiss. Doc. No. 6. On September 21, 2022, Texas First filed a reply to the response. Doc. No. 8. The court held oral argument on the motion to dismiss in conjunction with the initial pretrial conference on November 7, 2022. *See* Doc. No. 10. The motion to dismiss is now ripe for review.

## II.  DISCUSSION

### A.  Standard – Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "The defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (citation omitted).

### B. Analysis

As indicated above, Newtek asserts the following causes of action in the complaint: (1) fraudulent conveyance pursuant to 12 Pa. C.S. § 5101; (2) conversion of its secured collateral; and (3) tortious interference with contract. Compl. at 11–13. It also asserts a separate count where it seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and injunctive relief. *Id.* at 10. Texas First has moved to have the court dismiss these causes of action and requests for relief. *See generally* Mot. to Dismiss. The court will address each of these causes of action and requests for relief in turn.

#### 1. Count I: Declaratory Judgment

Newtek seeks a declaration from this court that the money paid from Children First to Texas First is rightfully owed to it. *See* Compl. at 10–11. The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also*

*Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021) (discussing DJA).

As is typical with understanding U.C.C. provisions, the court starts with the definitions of the terms of art. The Pennsylvania U.C.C. defines an "[a]ccount" as "a right to payment of a monetary obligation, whether or not earned by performance: (i) for property which has or is to be sold, leased, licensed, assigned, or otherwise disposed of; [and] (ii) for services rendered or to be rendered[.]" 13 Pa. C.S. § 9102(a). The Code also defines "[p]roceeds" as "[w]hatever is acquired upon the sale, lease, license, exchange or other disposition of collateral." *Id.* The Code further defines a "[d]eposit account" as "[a] demand, time, savings, passbook or similar account maintained with a bank. The term does not include investment property or accounts evidenced by an instrument." *Id.*

Newtek asks the court to declare that the transfer was improper under two theories: (1) Newtek had a senior perfected security interest in, *inter alia*, the "[r]eceivables and the proceeds thereof" and thus its lien should be paid before Texas First is entitled to any of the funds; or in the alternative (2) the transfer from Children First's deposit account involved collusion between Children First and Texas First and should be clawed back. *See* Compl. at 7, 8. The first theory fails as a matter of law while the second theory fails for lack of sufficient facts pled in the complaint.

The first theory fails because it incorrectly assesses Newtek's interest in the funds after the funds are transferred from the deposit account to Texas First. The U.C.C. states that "[a] transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." 13 Pa. C.S. § 9332(b). Thus, without a showing of collusion, Texas First took the contested funds free of any security interest in the deposit account held by Newtek.

The situation here is similar to that in *Cortland Savings and Banking Co. v. Platinum Rapid Funding Group, Ltd.*, 182 N.E.3d 1259 (Ohio Ct. App. 2021). In *Courtland Savings*, the plaintiff-bank took a security interest in a third party's accounts. *Id.* at 1262. The third party then sold a percentage of the future accounts receivable to the defendant. *Id.* The court held that the defendant took the money free of the plaintiff's security interest, "if there was no collusion." *Id.* at 1264. The court explained that Ohio's equivalent of section 9332(b) "permits [the defendant], as the transferee, to take the funds free of [the plaintiff's] security interest in the deposit account absent collusion." *Id.*[1]

Section 9332(b) of the U.C.C. places a high value on the finality of transactions and specifically creates this protection for transferees so that security interests in deposit accounts do not unnecessarily impair the free flow of commerce. 13 Pa. C.S. § 9332 cmt. 3. The Code specifically considered the situation where payments were made from a deposit account that contained collections from encumbered accounts receivables.[2] *Id.* These transactions are common in the commercial world. Although a security interest may survive in the proceeds from other types of collateral once deposited into the deposit account, once payment is transferred from the deposit account, the security interest is cut off. *See id.* Without a finding of collusion, Texas First took the

---

[1] The court determined that the trial court had erred in its "determination that [the plaintiff's] security interest in the funds remained intact." *Cortland Savings*, 182 N.E.3d at 1264.

[2] The comments to section 9332 provide an on-point example:

> **Example 1**: Debtor maintains a deposit account with Bank A. The deposit account is subject to a perfected security interest in favor of Lender. Debtor draws a check on the account, payable to Payee. Inasmuch as the check is not the proceeds of the deposit account (it is an order to pay funds from the deposit account), Lender's security interest in the deposit account does not give rise to a security interest in the check. Payee deposits the check into its own deposit account, and Bank A pays it. Unless Payee acted in collusion with Debtor in violating Lender's rights, Payee takes the funds (the credits running in favor of Payee) free of Lender's security interest. This is true regardless of whether Payee is a holder in due course of the check and even if Payee gave no value for the check.

13 Pa. C.S. § 9332 cmt. 2.

funds from Children First's deposit account free of any security interest. *Id.* Thus, the first theory that the transfer of funds violated Newtek's senior interest fails as a matter of law as Newtek did not have an interest in the proceeds after they left Children First's deposit account, unless there was collusion.

This leads the court to Newtek's second theory: If there was collusion between Texas First and Children First, then Newtek would have a claim. Section 9332 creates an exception to the general rule that transfers of funds from a deposit account leave free from a security interest when "the transferee acts in collusion with the debtor" to violate the rights of the secured party. *Id.* On a motion to dismiss, the court must take all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Geness v. Admin. Office of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020). But the court need not accept unsupported conclusions or unwarranted inferences. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). To support its collusion claim, Newtek does not plead any specific facts but instead states, "it can be presumed that Children First ignored the legal effect of Newtek's security interests therein, and colluded with [Texas First] to create additional value for Children First where none existed, by transferring their Receivables, which had been fully liened to Newtek, to [Texas First]." Compl. at 8. No other facts or specific allegations support this claim. Newtek asks the court to accept its unsupported conclusion without pleading specific underlying facts. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (holding complaints must do more than plead conclusions or assign unsupported labels); *see also Morse*, 132 F.3d at 906. That is not enough to survive a motion to dismiss. *Id.* Accordingly, the complaint fails to plead sufficient facts to support a claim for collusion. Because both theories fail, the court dismisses this claim for declaratory relief and its accompanying request for injunctive relief.

### 2. Count II: Pennsylvania's Uniform Voidable Transactions Act

The second cause of action is a claim of fraudulent conveyance pursuant to Pennsylvania's Uniform Voidable Transactions Act ("PUVTA"). Compl. at 11. Under PUVTA, creditors may obtain voidance of a transfer or obligation made to another party under three conditions: (1) the plaintiffs are "creditors" as defined by the statute; (2) the transfers were made with actual fraudulent intent; and (3) there are no viable defenses. *Carroll v. Stettler*, 941 F. Supp. 2d 572, 578 (E.D. Pa. 2013) (citing 12 Pa. C.S. §§ 5104(a)(1), 5107(a)(1), 5108(d)). The second element requiring fraudulent intent is dispositive at this stage.

Under a PUVTA claim, courts look to whether the transferor transferred the money to the defendant with the actual intent to defraud. *See id.*; *see also Chestnut St. Consol., LLC v. Dawara*, Civ. A. No. 21-3046, 2022 WL 3051830, at *9 (E.D. Pa. Aug. 3, 2022) (noting that PUVTA only looks at debtor's intent in making transfer, not transferee's). As with the first cause of action, Newtek fails to plead sufficient facts in the complaint to survive the motion to dismiss. The complaint fails to raise any specific facts that show Children First acted with an intent to defraud Newtek by transferring funds to Texas First. *See* Compl. at 8. Rather, the complaint essentially asks the court to presume malicious intent based on the fact that the transfer occurred. As explained above, this argument fails to meet the burden required to survive a motion to dismiss. *See Morse*, 132 F.3d at 906. Accordingly, the court dismisses the second count of the complaint.

### 3. Count III: Conversion

Newtek's third cause of action is a Pennsylvania common law conversion claim, arguing that Texas First wrongfully converted Newtek's rights to the funds at issue. *See* Compl. at 12–13. Under Pennsylvania law, "[a] conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without

lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964) (citation and internal quotation marks omitted). To succeed under a claim of conversion, the plaintiff must have had possession or be entitled to possess the property at the time of the alleged conversion. *Gunzburger v. Rosenthal*, 75 A. 418, 419 (Pa. 1910); *see also Eisenhauer v. Clock Towers Assocs.*, 582 A.2d 33, 36 (Pa. Super. 1990) ("[A] person seeking to recover on a theory of conversion need not be the owner of the property claimed to be converted, provided that the plaintiff is in possession or entitled to be in possession at the time of the conversion." (citations omitted)). "[I]t is not enough that it be merely a right of action or a right to take possession at some future day." *Gunzburger*, 75 A. at 419.

At the time of the alleged conversion, Newtek did not have any present right to possess the funds at issue. The nature of Newtek's property interest in the funds, the security agreement, would only permit Newtek to take possession of the funds in the occurrence of a default. *See* Compl., Ex. D at ECF p. 8, Doc. No. 1-6 ("In the event of the occurrence and continuance of any Event of Default, Secured Party shall at any time thereafter have the right . . . to any or all of the Collateral[.]").

Newtek did not have any right to possess the disputed funds at the time of the alleged conversion. *See Gunzburger*, 75 A. at 419. Without the plausible showing of collusion, the transfer of the funds from Children First's deposit account to Texas First cut off Newtek's rights to the funds in question. *See* 13 Pa. C.S. § 9332(b). Because of this cut-off rule, Newtek had no rights to the disputed funds when Children First defaulted. As such, the allegations in the complaint do not show a plausible claim of conversion. *See Morse*, 132 F.3d at 906 (stating courts need not credit bald assertions or legal conclusions found in complaint when analyzing motion to dismiss). Accordingly, the court grants the motion to dismiss with respect to the third count of the complaint.

### 4. Count IV: Tortious Interference with Contract

The fourth and final cause of action is tortious interference with contract. To assert a plausible claim for tortious interference with contract under Pennsylvania law, a plaintiff must allege facts satisfying the following elements:

> (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*BP Env't Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. 2008)); *see also Birl v. Philadelphia Elec. Co.*, 167 A.2d 472, 474 (Pa. 1961) (adopting Restatement (First) of Torts § 766 (1939)).

Newtek argues that Texas First tortiously interfered with Newtek's rights by "purchasing and collecting Children First Receivables which it either knew, or should have known, were subject to Newtek's senior liens." Compl. at ¶ 44. Based on the allegations in the complaint, this argument fails to show a plausible tortious interference claim because there are insufficient allegations to satisfy the second and third elements for this claim.

The second and third elements are closely related. *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971) ("The absence of privilege or justification in the tort . . . is closely related to the element of intent."). Courts look at the second and third elements independently and together. *See id.* The intent element is satisfied when the defendant acted, at least in part, for the purpose of accomplishing the interference and harming the plaintiff. *See id.*; *see also BP Env't Servs., Inc.*, 946 F. Supp. 2d at 410 (holding that plaintiff's failure to demonstrate that defendant had specific intent to harm plaintiff weighed against a finding of improper conduct). Newtek's only fact pled is that Texas First did not "establish that it has performed any searches for Uniform Commercial

Code filings prior to purchasing the Children First Receivables[.]"[3] Compl. at ¶ 18. Newtek claims that based on this allegation, the court can presume intent to interfere. *Id.* at ¶¶ 18, 44. The court does not find that this fact alone plausibly shows Texas First intentionally interfered with Newtek's rights. *Id.*

Even if the court accepted Newtek's argument that it has alleged a plausible claim that Texas First intentionally interfered with Newtek's rights to the funds in question, the facts in the complaint are still insufficient to show the third element of tortious interference, that Texas First acted without privilege or justification. Compl. at ¶ 44; *see also Glenn*, 272 A.2d at 899. To make a showing under this element, the plaintiff must put forth sufficient factual allegations such that a court could plausibly find that the defendant's actions were improper under the circumstances. *Phillips*, 959 A.2d at 429. "What is or is not privileged conduct in a given situation is not susceptible of the precise definition." *Glenn*, 272 A.2d at 899. Courts consider several factors in determining whether the defendant's actions which interfered with another's contractual relationship were improper. *Walnut Street Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 476 (Pa. 2011). These factors are:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

---

[3] Newtek also claims that Texas First failed to notify it of the transactions and therefore, Texas First's "collections of the Receivables from the Deposit account were all subject to Newtek's perfected first lien security in the proceeds." Compl. at ¶ 20. However, Newtek has not articulated or identified any duty for Texas First to notify Newtek and, as discussed above, the transfer of the funds from the deposit account cut off Newtek's security interest.

11

*Id.* (citing *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1184 (Pa. 1978)). Pennsylvania courts look at the "'rules of the game' of which society has adopted." *Adler, Barish, Daniels, Levin & Creskoff*, 393 A.2d at 1184 (citing Harper & James, The Law of Torts § 6.11, at 510, 511)).

Accepting all allegations in the complaint as true, considering the relevant *Adler* factors, and the proverbial rules of the game, Newtek has failed to plead facts that could support a finding that Texas First's behavior was improper under the circumstances. *See id.* Here, the most instructive factor is the first. The nature of Texas First's conduct was well within the range of normal for commercial transactions. *See* 13 Pa. C.S. § 9332 cmt. 3. "Sophisticated lenders . . . know the risks associated with allowing debtors to commingle funds in a single account that is used to pay various creditors in the ordinary course of the debtor's business." *Gen. Elec. Cap. Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1058 (8th Cir. 2005). Lenders may protect their security interests by perfecting their interests in deposit accounts by taking control. *See* 13 Pa. C.S. § 9312(b)(1) ("[A] security interest in a deposit account may be perfected only by control[.]"). Exercising control over a debtor's deposit account permits a creditor to avoid the very cut-off that occurred here. But when the lender does not take control and relies on proceeds for perfection, the creditor may have their security interests cut off. *See id.* That is just the nature of the game. *See Adler, Barish, Daniels, Levin & Creskoff*, 393 A.2d at 1184.

The second factor, the actor's motive, is also instructive. Texas First's motive is common to that of any commercial lender, profit. In the profit-seeking world of commercial transactions, allowing debtors to comingle funds into a deposit account creates risk that the creditor's security interest will be cut off. *See* 13 Pa. C.S. § 9332(b). Texas First, like Newtek, made its loans to Children First with hopes of making a profit. Unfortunately, both lost.

Further, there are social interests in protecting the freedom of action of Texas First. *Walnut Street Assocs., Inc.*, 20 A.3d at 476. "[T]he purpose of [section 9322] is to keep the wheels of commerce moving forward, even where funds subject to a valid security interest have been transferred without the secured party's permission or for no value, subject to the collusion exception[.]" *Zimmerling v. Affinity Fin. Corp.*, 14 N.E.3d 325, 331 (Mass. App. Ct. 2014); *see also* 13 Pa. C.S. § 9332 cmt. 2 ("This section affords broad protection to transferees who take funds from a deposit account and to those who take money."). Newtek failed to take control of Children First's deposit account and Texas First played within the rules of the game and properly took the funds within the ordinary course of business. *See Adler, Barish, Daniels, Levin & Creskoff*, 393 A.2d at 1184.

The Code and the Restatement both sanction reasonable competition between competitors. As section 768 of the Restatement explains,

> [o]ne's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor.

Restatement (Second) of Torts § 768(1) (1979) cmt. b. Texas First and Newtek were both competitors.

This court has not located sufficient factual allegations in the complaint to plausibly support an argument that Texas First intentionally interfered with Newtek's contractual relationship with Children First. *See id.* Accordingly, the court dismisses the final count of the complaint.

### III. CONCLUSION

For the reasons set forth above, the court grants Texas First's motion to dismiss. However, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020) (quoting *Phillips*, 515 F.3d at 236). The court must do so even if leave to amend is not requested by the plaintiff. *Id.* Because the court does not find that granting Newtek leave to amend would be inequitable or futile—and Texas First did not argue as much during oral argument, the court grants Newtek leave to amend the complaint.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.