## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEWTEK SMALL BUSINESS FINANCE, LLC, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| TEXAS FIRST CAPITAL, INC., | : | |
| *Defendant.* | : | NO.  22-2461 |

### MEMORANDUM

Scott, J.                                                                   February 6, 2025

Plaintiff Newtek Small Business Finance, LLC ("Plaintiff") filed an Amended Complaint alleging claims against Defendant Texas First Capital, Inc. ("Defendant") for: (1) declaratory judgment/injunctive relief; (2) avoidance and recovery of fraudulent conveyances under state law; (3) conversion; (4) tortious interference with contract; and (5) enablement of breach of fiduciary duty and deepening insolvency. *See* ECF No. 14, Am. Compl. Presently before this Court is Defendant's Motion to Dismiss[1] the Amended Complaint (ECF No. 15), which has been fully briefed. *See* ECF Nos. 18, 19. For the reasons that follow, the Motion to Dismiss will be granted and the case will be dismissed with prejudice. An appropriate Order will follow.

## I.   BACKGROUND[2] & PROCEDURAL HISTORY

Plaintiff issued two loans to an entity named Children First Home Health Care, Inc. d/b/a Health Calls ("Children First"). Am. Compl. ¶ 5. The first loan was dated December 27, 2018, and

---

[1]      Technically, Defendant did not file a Motion to Dismiss, but rather only a Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 15. While any "request for a court order must be made by motion," Fed. R. Civ. P. 7(b)(1), and Defendant is wrong to suggest that the "Memorandum of Law is the Motion to Dismiss," the Court, as a matter of judicial economy, will accept the Memorandum as a Motion.

[2]      The following facts are taken from the Amended Complaint (ECF No. 14) and are accepted as true in deciding the Motion to Dismiss.

was in the principal amount of $1,200,000, and the second loan was dated March 28, 2019, and was in the principal amount of $550,000. *Id.* ¶¶ 5–10. As security for the obligations under the loans, Children First executed two Security Agreements granting Plaintiff "a lien on and/or purchase money security interest [in] substantially all of [Children First's] personal property." *Id.* ¶¶ 6, 8. In each of these Security Agreements, "Children First expressly granted Plaintiff 'a general security interest in all of Debtor's right, title and interest in all personal property of Debtor, now owned or hereafter acquired, . . . of every kind and description wherever located, including, without limitation: all accounts and accounts receivable, general intangibles, . . . and any and all products and proceeds of any of the foregoing, whether now existing or hereafter acquired[.]'" *Id.* ¶ 10. Additionally, on March 28, 2019, Plaintiff, Children First, together with Maria Radwanski, a principal of Children First ("M. Radwanski"), her husband, David Radwanski ("D. Radwanski"), Michael Little, another principal of Children First ("M. Little") and his wife, Kerri Little ("K. Little") executed a "Cross-Collateralization and Cross Default Agreement" for the two loans. *Id.* ¶ 9.

In July 2019, Defendant entered the fray when it purchased a portion of Children First's future receivables amounting to $954,381.43 in exchange for an upfront sum of $590,878.03, less origination fees of $35,000. *Id.* ¶¶ 22, 35. Defendant collected these payments by auto-debiting Children First's bank account. *Id.* ¶ 20. At the time Defendant contracted for the purchase of Children First's receivables, Children First was in deep financial distress. *Id.* ¶¶ 12, 32. Plaintiff alleges that Defendant "actually knew, or should have known of Children First's financial troubles when it first extended financing," which gave rise to an affirmative duty to search the public records for any secured creditors whose interests might be affected, and to notify them of its intentions. *Id.* ¶ 36. Plaintiff further alleges that Defendant either: "(a) negligently performed its

underwriting, and failed to perform a search for UCC financing statements which would have revealed [Plaintiff's] prior perfected security interest in and lien on Children First's accounts, and the proceeds thereof; (b) actively conspired with Children First's officers to keep the contemplated transactions secret; and/or (c) enabled Children First's principals' wrongful conduct and breach of their fiduciary obligations to its creditors." *Id.* ¶ 37.

Not too long after Defendant's purchase of Children First's receivables, in December 2019, M. Little filed for Chapter 7 bankruptcy, and then in April 2020, M. Radwanski and D. Radwanski filed for Chapter 11 bankruptcy. *Id.* ¶¶ 15, 23. Thereafter, on January 20, 2020, Children First ceased all business operations without satisfying the First and Second Loans. *Id.* ¶ 14.

On June 23, 2022, Plaintiff filed its original Complaint against Defendant alleging the following counts: (1) declaratory judgment/injunctive relief; (2) avoidance and recovery of fraudulent conveyances under state law; (3) conversion; and (4) tortious interference with contract. ECF No. 1. Defendant filed a Motion to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), which after being fully briefed, the Honorable Edward G. Smith granted and dismissed the Complaint without prejudice to the Plaintiff filing an amended complaint (hereinafter, "Prior Opinion"). ECF Nos. 12, 13. Principally, the Court's Prior Opinion found that the Complaint was "devoid of any facts to support a finding of collusion, misconduct, or other fraudulent intent." ECF No. 12 at 1.

Plaintiff timely filed an Amended Complaint, which alleged the same four counts in its original Complaint, along with the additional count (Count V) for enablement of breach of fiduciary duty and deepening insolvency. ECF No. 14, Am. Compl. The Amended Complaint does contain factual allegations not contained in the original Complaint. However, virtually all of these allegations relate to M. Little's alleged fraudulent conduct with respect to Children First's business

affairs prior to his departure from Children First and information that came to light during M. Little's and the Radwanski's bankruptcy filings, all of which occurred after the transactions at issue in this case. *See generally* ECF No. 14.

Thereafter, Defendant filed a Memorandum of Law in Support of its Motion to Dismiss arguing that like the original Complaint, Plaintiff's Amended Complaint fails to set forth any plausible claims against Defendant.[3] ECF No. 15. Plaintiff filed an Answer to Defendant's Motion to Dismiss (ECF No. 18), and Defendant filed a Reply in Support of its Motion. ECF No. 19. Accordingly, this matter is ripe for resolution.

## II.    **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See*

---

[3]     Defendant also asks this Court award attorney fees because the claims asserted in the Amended Complaint are frivolous. The Court declines to award such fees.

*McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

## III.    **DISCUSSION**

As described below, Plaintiff's Amended Complaint fails to cure the pleading deficiencies previously identified in the Court's Prior Opinion. Additionally, the new claim Plaintiff put forth in its Amended Complaint also fails to state a claim. The Court will address each claim in turn.

### A.    **Count I: Declaratory Judgment**

Like Plaintiff's original Complaint, Count I of its Amended Complaint seeks a declaration from the Court that the money paid from Children First to Defendant is rightfully owed to Plaintiff. The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021) (discussing DJA).

As the Court detailed in its Prior Opinion and as remains the case in Plaintiff's Amended Complaint, Plaintiff requests that this Court declare that the transfer to Defendant "was improper under two theories: (1) [Plaintiff] had a senior perfected security interest in, *inter alia*, the '[r]eceivables and the proceeds thereof' and thus its lien should be paid before [Defendant] is entitled to any of the funds; or in the alternative (2) the transfer from Children First's deposit account involved collusion between Children First and [Defendant] and should be clawed back." ECF No.12 at 5; Am. Compl. at 14–15. The Court held in its Prior Opinion that "[t]he first theory fails as a matter of law while the second theory fails for lack of sufficient facts pled in the complaint." ECF No. 12 at 5. The Amended Complaint did not cure these identified deficiencies.

With respect to the first theory and as explained by the Court in its Prior Opinion, the U.C.C. provides that "[a] transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." 13 Pa. C.S. § 9332(b). Therefore, without a showing of collusion, Defendant took the contested funds free of any security interest in the deposit account held by Plaintiff. ECF No.12 at 5. Nothing in Plaintiff's Amended Complaint nor in its Answer to the Motion to Dismiss changes that outcome.

As to the second theory, once again Plaintiff has failed to adequately plead collusion. "[C]ollusion involves being complicit in a wrongdoing, and is explicitly compared to aiding and abetting an intentional tort. To be found in collusion, the recipient of the transfer must have 'affirmatively engaged in wrongful conduct.'" *In re 3PL4PL*, 619 B.R.441, 474 (D. Co. 2020) (quoting U.C.C. § 8-503(e) cmt. 3). "Mere knowledge of the rights of others and that the transferor's act is wrongful is not sufficient to support a claim of collusion." *Id.*

Plaintiff's Answer to the Motion to Dismiss argues that it has shown collusion because the facts in the Amended Complaint "establish[] that Children First was in deep financial distress when [Defendant] first contracted for the purchase of its future receivables" and that Defendant's "financing did nothing other than to deepen Children First's insolvency, rending [Defendant] subject to the claims of Children First's creditors." ECF No. 18-1 at 11–12. Additionally, the Amended Complaint alleges that Defendant "either knew, or should have known of [Plaintiff's] prior record liens against the [r]eceivables by virtue of the duly filed Newtek Financing Statements," and Defendant "ignored the legal effect of [Plaintiff's] security interests, and [Children First] colluded with [Defendant] to create additional value for Children First where none existed[.]" Am. Compl. ¶¶ 40–43. Here, even if the Court were to accept these conclusory

statements, at most, Plaintiff has alleged mere knowledge of the rights of others, which as described above, is not sufficient to support a claim of collusion. Thus, this theory fails to state a claim.

Accordingly, because both theories once again fail, the Court will dismiss the claim for declaratory relief and its accompanying request for injunctive relief.

**B.      Count II: Pennsylvania's Uniform Voidable Transactions Act**

Count II of Plaintiff's Amended Complaint is for fraudulent conveyance under Pennsylvania's Uniform Voidable Transactions Act ("PUVTA"). Under PUVTA, creditors may obtain voidance of a transfer or obligation made to another party under three conditions: (1) the plaintiffs are "creditors" as defined by the statute; (2) the transfers were made with actual fraudulent intent; and (3) there are no viable defenses. *Carroll v. Stettler*, 941 F. Supp. 2d 572, 578 (E.D. Pa. 2013) (citing 12 Pa. C.S. §§ 5104(a)(1), 5107(a)(1), 5108(d)). Here, like the Court found in its Prior Opinion, Plaintiff has failed to allege facts as to the second element requiring fraudulent intent.

Under the PUTVA, there are two fraud provisions: the actual intent theory of fraud and the constructive fraud theory. *In re Blatstein*, 192 F.3d 88, 96 (3d Cir. 1999). Even "if a debtor acts with fraudulent intent, relief may still be denied if the transferee can show that [it] 'took in good faith *and* for a reasonably equivalent value.'" *Universal Computer Consulting, Inc. v. Pitcairn Enterprises, Inc.*, No. 03-cv-2398, 2005 WL 2077269, at *8 (E.D. Pa. Aug. 26, 2005) (quoting 12 Pa. C.S. § 5108(a)). "To establish that [it] took in good faith, the transferee must demonstrate that [it] 'acted without actual fraudulent intent' and 'did not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor.'" *Id.* (quoting 12 Pa. C.S. § 5108(a)). Here, Defendant's transactions were entirely permissible under the UCC and Pennsylvania law,

and, therefore, do not constitute fraud. Moreover, as described *supra*, Plaintiff has failed to adequately allege collusion. Therefore, any claim premised on an actual intent theory of fraud fails.

As to the constructive fraud provision, "[c]onstructive fraud cannot occur unless the debtor makes a transfer 'without receiving a reasonably equivalent value in exchange for the transfer or obligation.'" *Id.* (citing 12 Pa. C.S. §§ 5104(a)(2), 5105). Here, Defendant provided funding to Children First in exchange for periodic re-payments from Children First. Thus, the payments are simply repayment of the funding agreement and as such, do not constitute fraudulent transfers under the constructive fraud theory.

Accordingly, because Plaintiff has not adequately pled intent, Count II of Plaintiff's Amended Complaint will be dismissed.

### C.    Count III: Conversion

Count III of Plaintiff's Amended Complaint alleges a Pennsylvania common law conversion claim, which argues that Defendant wrongfully converted Plaintiff's rights to the funds at issue. Am. Compl. at 16. "Conversion is 'the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.'" *Philadelphia Factors, Inc. v. The Working Data Grp., Inc.*, No. 1726, 2003 WL 22250345, at *2 (Pa. Com. Pl. Sept. 16, 2003) (quoting *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (1964)). "[I]t is not enough that it be merely a right of action or a right to take possession at some future day." *Gunzburger v. Rosenthal*, 75 A. 418, 419 (Pa. 1910); *see also Eisenhauer v. Clock Towers Assocs.*, 582 A.2d 33, 36 (Pa. Super. 1990) ("[A] person seeking to recover on a theory of conversion need not be the owner of the property claimed to be converted, provided that the plaintiff is in possession or entitled to be in possession at the time of the conversion." (citations omitted)).

Plaintiff's Amended Complaint fails to state a claim for conversion because at the time of the alleged conversion, Plaintiff did not have any present right to possess the funds at issue. Under Plaintiff's security agreement with Children First, Plaintiff was only permitted to take possession of the funds in the occurrence of default. Am Compl. ¶ 10. And as this Court detailed in its Prior Opinion, "[w]ithout the plausible showing of collusion, the transfer of the funds from Children First's deposit account to [Defendant] cut off [Plaintiff's] rights to the funds in question." ECF No. 12 at 9. Moreover, as set forth above, Plaintiff has failed to demonstrate a plausible showing of collusion. Therefore, Plaintiff's conversion claim fails and will be dismissed.

### D.    Count IV: Tortious Interference with Contract

Count IV of Plaintiff's Amended Complaint is a tortious interference with contract claim. Am. Compl. at 17. To assert a plausible claim for tortious interference with contract, a plaintiff must allege facts demonstrating the following:

> (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*BP Env't Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. 2008)). Plaintiff's Amended Complaint alleges Defendant tortiously interfered with Plaintiff's contractual rights against Children First by "purchasing and collecting Children First [r]eceivables which it either knew, or should have known, were subject to [Plaintiff's] senior liens." Am. Compl. ¶ 61. Like its original Complaint, Plaintiff's Amended Complaint has failed to allege facts to support the second and third elements of a tortious interference with contract claim.

Courts look at the second and third elements independently and together. *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971). The intent element requires proof that the "defendant acted 'for the specific purpose of causing harm to the plaintiff.'" *Phillips v. Selig*, 959 A.2d 420, 429 (2008) (quoting *Glenn*, 272 A.2d at 899). Plaintiff alleges that Defendant "knew, or should have known of [Plaintiff's] prior record liens against the [r]eceivables by virtue of the duly filed Newtek Financing Statements" but Defendant "never notified [Plaintiff] of [Defendant's] intent to purchase same, and never sought [Plaintiff's] authority to do so" and in so doing, "colluded" to "create additional value for Children First where none existed, by transferring [r]eceivables, which had been fully liened to [Plaintiff], to [Defendant]." Am. Compl. ¶¶ 40–43. The Court does not find these conclusory statements plausibly allege the second element, that Defendant intentionally interfered with Plaintiff's rights.

Even if this Court found that Plaintiff adequately alleged that Defendant intentionally interfered with Plaintiff's right to the funds at issue, the facts are still insufficient to show the third element of tortious interference with contract, that Defendant acted without privilege or justification. This element "requires proof that the defendant's actions were improper under the circumstances presented." *BP Env't Servs., Inc.*, 946 F. Supp. 2d at 408 (internal quotations and citation omitted). Courts look to the following factors to determine if a defendant acted improperly:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

*Id.* (citation omitted). Overall, the "central inquiry is whether the defendant's conduct is sanctioned by the rules of the game which society has adopted." *Phillips*, 959 A.2d at 435. Here, Defendant's conduct was sanctioned by the rules of the game. The Court will highlight a few of the factors which demonstrate this.

As to the first factor, Plaintiff has not pled facts to support a finding that Defendant's conduct was improper. "Sophisticated lenders . . . know the risks associated with allowing debtors to commingle funds in a single account that is used to pay various creditors in the ordinary course of the debtor's business." *Gen. Elec. Cap. Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1057 (8th Cir. 2005). As this Court's Prior Opinion explained: "when the lender does not take control and relies on proceeds for perfection, the creditor may have their security interests cut off" and "[t]hat is just the nature of the game." ECF No. 12 at 12.

As to the second factor, as this Court previously detailed, "[i]n the profit-seeking world of commercial transactions, allowing debtors to comingle funds into a deposit account creates risk that the creditor's security interest will be cut off." ECF No. 12 at 12 (citing 13 Pa. C.S. § 9332(b)). Here, both parties made their loans to Children First with the hopes of making a profit. Unfortunately, both parties lost.

Additionally, social interests here favor protecting the freedom of action of Defendant. "[T]he purpose of [section 9-332] is to keep the wheels of commerce moving forward, even where funds subject to a valid security interest have been transferred without the secured party's permission or for no value, subject to the collusion exception[.]" *Zimmerling v. Affinity Fin. Corp.*, 14 N.E.3d 325, 331 (Mass. App. Ct. 2014); *see also* 13 Pa. C.S. § 9332 cmt. 2 ("This section affords broad protection to transferees who take funds from a deposit account and to those who take money."). Here, Plaintiff failed to take control of Children First's deposit account, and

meanwhile, Defendant played within the rules of the game and properly took such funds in the ordinary course of business.

For the foregoing reasons, Plaintiff's Amended Complaint fails to adequately plead a tortious interference with contract claim and, therefore, Count IV of Plaintiff's Amended Complaint will be dismissed.

### E.    Count V: Enablement of Breach of Fiduciary Duty & Deepening Insolvency

Plaintiff's Amended Complaint adds a Count which was not alleged in its original Complaint. Count V is titled "Enablement of Breach of Fiduciary Duty and Deepening Insolvency," however, Plaintiff clarifies in its Answer to Defendant's Motion, it is a claim of aiding and abetting a breach of fiduciary duty. *See* ECF 18-1 at 25. "[T]he elements of a claim for aiding and abetting a breach of fiduciary duty claim are (i) a breach of fiduciary duty owed to another, (ii) knowledge of the breach by an aider and abettor, and (iii) substantial assistance or encouragement by the aider and abettor in effecting that breach." *In re Swarthmore Grp., Inc.*, No. AP 24-00095, 2025 WL 213861, at *8 (Bankr. E.D. Pa. Jan. 15, 2025) (quoting *In re Forks Specialty Metals Inc.*, No. AP 19-00028, 2023 WL 3239468, at *20 (Bankr. E.D. Pa. Apr. 30, 2023)). Courts have held that "when a corporation is insolvent, corporate directors and officers owe a fiduciary duty to the creditors of the corporation." *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. CV 17-495, 2020 WL 1233557, at *3 (E.D. Pa. Mar. 12, 2020) (citations omitted). Accordingly, to plausibly allege that Defendant aided and abetted Children First's officers' breach of fiduciary duty, Plaintiff must sufficiently plead that Defendant knew Children First was insolvent at the time it entered into the purchase agreements and that it substantially assisted the officers in breaching their fiduciary duty. Plaintiff has failed to do so and, therefore, this claim fails.

With respect to the knowledge element of such a claim, the Pennsylvania Supreme Court has explained that to be held liable for aiding and abetting, the defendant must have had *actual* knowledge. *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 89 (Pa. 2023). Plaintiff argues "[u]nder the circumstances presented in this case, where the principals of [Plaintiff's] borrower were actively working to mislead [Plaintiff] to believe that 'everything was fine,' while they were selling its Collateral to Defendant, [Plaintiff] is entitled to take discovery to establish: the extent of Defendant's actual knowledge about Children First's financial condition; why Defendant failed to perform a UCC search prior to its initial funding; the extent of Defendant's actual knowledge [of] Newtek's prior perfected security interests; and the nature and content of Defendant's communications with Children First's principals." ECF No. 18-1 at 27–28. Plaintiff's argument is incorrect. Discovery cannot be used as "a fishing expedition to . . . seek out the facts necessary to establish a legally adequate complaint." *White v. Hon Co.*, 520 Fed. App'x 93, 95 (3d Cir. 2013) (citations omitted). Thus, Plaintiff has failed to allege Defendant had actual knowledge that Children First was insolvent at the time it entered into the funding agreements at issue.

Moreover, if Defendant did not know about Children First's alleged insolvency, and therefore could not have known about the officers' alleged breach of fiduciary duty, then Defendant cannot be deemed to have "substantially assisted or encouraged the [officers] in effecting that breach." *Teva Pharm. USA, Inc. v. Sanhu*, 291 F. Supp. 3d 659, 677 (E.D. Pa. 2018). Plaintiff's conclusory statement to the contrary is insufficient to demonstrate this element.

Accordingly, Plaintiff's aiding and abetting claim fails to state a claim and will be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Amended Complaint will be dismissed with prejudice as further amendment would be inequitable or futile. An appropriate Order will follow.